BARNEY MULLEN ET AL. V. CREIGHTON MORRIS, TRUSTEE.

FILED FEBRUARY 5, 1895. No. 6059.

1. **Action on Bond:** PLEADING. *Held*, That the petition states a cause of action.

2. **Principal and Surety.** Where one signs as surety a bond, which in form is a joint obligation, upon condition that others are to sign the same with him, and it is delivered without the condition having been complied with, the instrument is invalid as to the one so signing as surety, unless the obligee, prior to the delivery, had no notice of such condition, or the surety, after signing, waived the condition.

3. **Bonds.** Where such a bond is delivered to the obligee without being executed by all the persons named in the body thereof as obligors it is sufficient to put the obligee upon inquiry, whether those who signed consented to its being delivered without the signatures of the others.

4. **Principal and Surety.** Where a bond not signed by all the persons named in the body as obligors is delivered to the obligee, there is no presumption that the instrument was not to be considered binding upon those signing until executed by all the obligors named in the body thereof. It is for those who executed it to show that they were not to be bound unless it was executed by the others.

5. **Contracts.** An agreement by the creditors of an insolvent bank with the stockholders and officers thereof to discount their claims against the bank ten per cent, to throw off all interest after a certain date, and to extend the time of payment of the claims for a definite period, is a sufficient consideration for a bond given to a trustee of such creditors by such stockholders and officers to secure the payment of the indebtedness of the bank.

6. **Review:** ASSIGNMENTS OF ERROR. An assignment in a petition in error, "Errors of law occurring at the trial, excepted to at the time," is *too* indefinite to secure a review of the rulings of the trial court on the admission or exclusion of testimony. *Murphy v. Gould*, 40 Neb., 728, followed.

7. **Bonds.** In an action on a penal bond judgment may be recovered for the actual damages sustained, not exceeding the penalty of the bond and interest from the date of the breach of the conditions, less all the payments made by the obligors.

8. **Payment:** PLEADING. Payment, to be available as a defense, must be pleaded. Where payments are alleged in the petition and proved at the trial without objection, although denied by the answer, the defendant will be entitled to credit for such payments.

9. **Action on Bond:** DAMAGES. *Held,* That the damages assessed by the jury are excessive.

ERROR from the district court of Richardson county. Tried below before BUSH, J.

The facts are stated in the opinion.

*E. W. Thomas, R. S. Molony,* and *J. H. Broady,* for plaintiffs in error:

The demurrer to the petition should have been sustained. (*Cutler v. Roberts*, 7 Neb., 4; *Sharp v. United States*, 4 Watts [Pa.], 21; *Fletcher v. Austin*, 34 Am. Dec. [Vt.], 698; 1 Wait, Actions & Defenses, 677.)

The obligors are in the attitude of sureties with all rights of the latter. (*Cady v. Smith*, 12 Neb., 630; *Patterson v. Wyomissing Mfg. Co.*, 40 Pa. St., 117; *Hanson v. Donkersley*, 37 Mich., 184; *Drinkwine v. City of Eau Clare*, 53 N. W. Rep. [Wis.], 673; Brandt, Sureties, sec. 79.)

The penal sum of twenty-five thousand dollars, named in the bond sued on, less the payments, was the maximum limit of liability of plaintiffs in error. (*Fraser v. Little*, 13 Mich., 195; *Spencer v. Perry*, 18 Mich., 393; *Copeland v. Cunningham*, 63 Ala., 394; *Freeman v. People*, 54 Ill.,

153; *Carter v. Carter*, 4 Am. Dec. [Conn.], 177; *Warner v. Thurlo*, 15 Mass., 154.)

*Isham Reavis* and *C. F. Reavis*, also for plaintiffs in error:

The bond, in legal effect, is the creation of a fund for the common benefit of all the creditors; and as no special mode is provided by statute for the enforcement of statutory and constitutional liability of stockholders of a broken bank for the debts of the same, the remedy is in equity and not at law, and no other remedy obtains in a suit on a bond like this, as it is an agreed liquidation of the aggregate liability of all the stockholders for the debts of the bank named. (*Pollard v. Bailey*, 20 Wall. [U. S.], 520; *Terry v. Little*, 101 U. S., 216; *Mills v. Scott*, 99 U. S., 25; *Smith v. Huckabee*, 53 Ala., 191; *Jones v. Jarman*, 34 Ark., 323; *Peck v. Miller*, 39 Mich., 594; *Harris v. First Parish in Dorchester*, 23 Pick. [Mass.], 112; *Wetherbee v. Baker*, 35 N. J. Eq., 501; *Wright v. McCormack*, 17 O. St., 86; *Umsted v. Buskirk*, 17 O. St., 113; *Brown v. Hitchcock*, 36 O. St., 667; *Coleman v. White*, 14 Wis., 700*; *Eames v. Doris*, 102 Ill., 350; *Junesma v. Schuttler*, 114 Ill., 156.)

*Frank Martin* and *C. Gillespie*, contra:

The agreement to compromise was binding upon all creditors who signed it. (*Lambert v. Shetler*, 32 N. W. Rep. [Ia.], 425.)

The stockholders who signed the bond are liable in this action for ninety per cent of the claims of the creditors, less the amount paid. The penalty fixed by the bond is not the limit of liability. (*Clark v. Bush*, 3 Cow. [N. Y.], 151; Field, Damages, sec. 546; *Foley v. McKeegan*, 4 Ia., 10; *Sween v. Steele*, 5 Ia., 352; *Graham v. Bickham*, 4 Dall. [U. S.], 149; *Stewart v. Carter*, 4 Neb., 564; *Scofield v. Quinn*, 55 N. W. Rep. [Minn.], 745; *Waynick v.*

*Richmond,* 11 Kan., 488; *Dooley v. Watson,* 1 Gray [Mass.], 414.)

NORVAL, C. J.

The Farmers & Merchants Bank of Humboldt was incorporated under the laws of this state in July, 1879, and thereafter was engaged in the business of banking at Humboldt until in June or July, 1889, when the bank closed and made an assignment for the benefit of its creditors. Creighton Morris was appointed assignee, who qualified as such.    Negotiations were soon thereafter had between the officers and stockholders of the bank and the creditors for the purpose of effecting a settlement or compromise of the claims of the creditors.    A proposition was finally made to the creditors to pay them 90 cents on the dollar of their claim within two years, the creditors to throw off all interest accruing after September 19, 1889.    This proposition was favorably received by nearly all the persons who held claims against the bank.    The following paper was prepared and presented to the creditors for their signature:

"The undersigned, creditors of the Farmers & Merchants Bank of Humboldt, Nebraska, being desirous of effecting a compromise and settlement of all differences touching the liability of the several stockholders of said bank, hereby severally agree to discount the sum of ten (10) per cent from the face of each of our respective claims, as the same may be filed, proven, and allowed before the county court of Richardson county, Nebraska, and to forbear the collection of interest accruing thereon after September 19, 1889; provided the stockholders of said bank shall, on or before said 19th day of September, 1889, convey and assign unto Creigton Morris, receiver for said bank, all of the property held by them, or either of them, as trustees of said bank, and shall file with said county court a good and sufficient bond, conditioned that said stockholders shall, on or before October 1, 1889, pay unto

the receiver appointed by the court for said bank the sum of twelve thousand two hundred ($12,200) dollars, and soon thereafter as all the assets in the hands of the receiver shall have been converted and disbursed, and within two (2) years thereafter, at farthest, shall pay unto the said receiver such further sum of money as shall suffice to liquidate, in full, all of the claims allowed by the court against such bank, without interest after September 19, and after deducting from the face of such claims a discount of ten (10) per cent as above provided. Dated this 13th day of August, 1889."

. The foregoing instrument, after being signed by all the creditors of the bank excepting three or four, who refused to sign, was delivered to Creighton Morris, the assignee, and the following bond was also executed and delivered to said Morris:

"Know all men by these presents, that we, W. W. Turk, Barney Mullen, J. C. Furgus, Wm. N. Nims, A. L. Fry, R. A. Stewart, T. J. Frazier, A. R. Nims, and R. C. Lamberton are held and firmly bound, jointly and severally, unto Creighton Morris, receiver for the Farmers & Merchants Bank, of Humboldt, Nebraska, in the penal sum of twenty-five thousand dollars ($25,000), good and lawful money, for the payment of which, well and truly to be made unto the said Creighton Morris, receiver, and to his successors, we jointly and severally bind ourselves, our heirs, executors, and administrators.

"Witness our hand and seals this twenty-fourth day of August, A. D. 1889.

"The conditions of this obligation are such, that whereas certain differences have existed between the creditors of the said Farmers & Merchants Bank and the stockholders of said bank touching the liability of such stockholders toward such creditors; and whereas one of the conditions of such compromise is that the stockholders of said Farmers & Merchants Bank shall, on or before the first day of

Mullen v. Morris.

October, 1889, pay unto the receiver appointed by the
court for said bank the sum of twelve thousand two hun-
dred dollars ($12,200), and, within ninety days after all
the assets in the hands of the receiver or assignee shall
have been converted and disbursed, shall pay unto said re-
ceiver such further sum of money as shall suffice to liqui-
date in full all of the claims proven and allowed by the
court against such bank without interest after the 19th day
of September, 1889, deducting from the face of each said
claim a discount of ten per cent, said amount of ninety
per cent to be paid creditors net over and above the ex-
penses of the assignee and the court proceedings.    The en-
tire amount of ninety per cent to be paid within two years
from October 1, 1889:

"Now, therefore, if said stockholders of the Farmers &
Merchants Bank aforesaid shall well and truly pay, or
cause to be paid, unto said receiver the said several sums
of money at the times and in the manner herein above re-
cited, these presents shall become null and void, otherwise
to remain in full force and effect.

"Done in the county of Richardson and state of Ne-
braska.

| | |
|---|---|
| "W. W. Turk. | [seal.] |
| "Barney Mullen. | [seal.] |
| "J. C. Fergus. | [seal.] |
| "Wm. N. Nims. | [seal.] |
| "——— ———. | [seal.] |
| "——— ———. | [seal.] |
| "T. J. Frazier. | [seal.] |
| "A. R. Nims. | [seal.] |
| "R. C. Lamberton. | [seal.]" |

On the 12th day of January, 1892, this action was
brought by the defendant in error for the use and benefit
of, and as trustee for, the creditors of the bank upon the
foregoing bond against each of the signers thereof. The
return on the summons discloses that W. W. Turk, A. R.

Nims, and R. C. Lamberton were not served, and the first two named made no appearance in the cause.    It is stated in the briefs filed that Lamberton appeared and filed a general demurrer; that the same was overruled, and he stood upon the demurrer.    The record fails to show that he appeared in the action for any purpose, nor has he joined in the petition in error, although his counsel have filed for him a brief in this court.    A brief statement of the issues made by the pleading will be necessary to an understanding of the questions presented for our consideration.

The petition alleges, substantially, the incorporation of the bank; that it made an assignment for the benefit of its creditors; that the defendants were incorporators and stockholders of said bank; and that it, for more than a year prior to the incurring of the indebtedness from the bank to its creditors, had wholly failed to give the notice required by section 136 of chapter 16 of the Compiled Statutes; that by reason thereof the stockholders were individually liable for the debts of the bank; that on the 24th day of August, 1889, a settlement and compromise was made between the defendants and certain creditors of the bank, whose names are set forth in the petition, by which the latter should receive ninety cents on the dollar of their claims and the defendants were to have two years in which to pay the same.    The petition sets out a copy of the paper signed by the creditors heretofore mentioned, together with the names and amount due each of the persons signing the same; alleges that the proposition contained in said paper was accepted by the defendants, and, in consideration of said extension of time and the discount of ten per cent and interest said defendants executed and delivered to the plaintiff the bond set out above, and which is copied into, and made a part of, the petition.    The petition further avers that the persons who signed said bond have paid the sum of $12,200 therein mentioned, and delivered to the plaintiff the property held by them in trust as therein stip-

ulated ; that the total amount of the indebtedness of the
bank to the parties for whom plaintiff brings this suit, as
proved and allowed by the county court, was $45,470,
and deducting therefrom ten per cent, left the sum of
$40,923.09 due on said bond; that plaintiff has received from
all sources the sum of $21,370.94, including. said sum of
$12,200; that the assignee of said bank has converted all
the assets of said bank into money and the proceeds arising
therefrom are included in the above sum credited to the de-
fendants ; that there is still due said creditors, after de-
ducting said ten per cent and allowing all credits, the sum
of $19,552.15; that the defendants, stockholders and offi-
cers of the bank, have failed and neglected to publish the
notice of the incorporation of the bank as provided by sec-
tions 130 and 131 of chapter 16 of the Compiled Statutes,
but during the entire existence of the bank they omitted
to publish the annual notice of the bank's indebtedness as
required by section 136 of said chapter ; that the parties
for whom this action was instituted have faithfully kept
all the stipulations in said bond which they were required
to keep and perform.

A motion to strike out of the petition, as redundant and
irrelevant, the averments therein relating to the failure to
give the notices of the indebtedness of the bank and of its
incorporation was filed, which motion was overruled by
the court, and an exception was entered upon the record.

A demurrer to the petition was interposed on the follow-
ing grounds : (1) That the petition does not state facts suffi-
cient to constitute a cause of action ; (2) that it does not
appear there was a sufficient consideration for the bond
sued upon ; that said bond shows upon its face that it was
never signed by the obligors therein named and that it was
never completed or became a valid and binding obligation.
The demurrer was overruled, and thereupon the defendant
answered, denying all the averments of the petition not ex-
pressly admitted ; admitted the incorporation of the bank ;

that it made an assignment; that the defendants owned stock in the bank, and that negotiations for a settlement were had between the stockholders and the creditors of the bank. The defendants further answering aver that they never received any dividends on their stock, nor did they take any part in the management or control of the business of the bank; that the defendant R. C. Lamberton was the cashier and sole manager; that the bond was executed by the defendants with the understanding of all the parties, and upon the express condition that it should be signed by all the stockholders whose names are set out in the body of the instrument as obligors, and also that the paper signed by the creditors should be executed by all the creditors of the bank, and that the bond was not to be delivered to the obligee therein named until it should be so signed and executed; that said bond was never signed by R. A. Stewart and A. L. Fry, two of the stockholders mentioned in the body thereof, nor was the same ever delivered; that all the creditors of the bank did not sign the paper set out in the petition; that four of them whose claims aggregate $13,000 refused so to do, but have brought separate actions to collect the amount of their claims from the defendants as stockholders merely; that the defendants, believing that all the stockholders had executed the bond, and that all the creditors had signed the other writing, paid to Creighton Morris, the assignee selected by the creditors, to be used by him in paying *pro rata* the claims against the bank, the sum of $——, and that two of the defendants whose names were given have paid said Morris for the same purpose the sum of $2,500 each.

The reply denies every allegation in the answers not expressly admitted; admits that two stockholders did not execute the bond, and that four creditors did not sign the other paper nor accept the terms of the compromise, and that they have brought suits against the stockholders as stated in the petition; alleges that the defendants, with

knowledge that two of the stockholders and four of the creditors had not signed, and would not sign, and refused to be bound by the terms of the compromise, delivered the instrument sued on to the plaintiff, and then and there informed him they accepted the said proposition for a settlement and compromise, and that the bond should stand as the binding obligation of the defendants to all the creditors who had agreed to the terms of said compromise.

A trial was had at the June term, 1892, which resulted in a verdict for the plaintiff for the sum of $19,552.15. This verdict the court set aside on motion of the defendants, and at the November term following there was a second trial with a verdict and judgment for the plaintiff in the sum of $21,148.75. The defendants have brought the same to this court for review.

The first assignment of error relates to the overruling of the demurrer to the petition. The contention of counsel is that the petition is insufficient and fatally defective, in that the bond on which suit was brought shows on its face that it was intended to be executed by the nine persons named in the body thereof as principals, but that it was only executed by seven of them. It is argued by counsel for defendants that for this reason the bond was incomplete and invalid, and there can be no recovery against those who signed it. It is firmly established by the decisions that when one signs a joint bond as surety upon conditions that others are to sign the same with him, and it is delivered without such condition being complied with, the bond cannot be enforced against the one so signing as surety, unless the obligee had no notice of the condition, or it be established that the surety, after signing, waived the condition. (*Cutler v. Roberts*, 7 Neb., 4; *Sharp v. United States*, 4 Watts [Pa.], 21; *Fletcher v. Austin*, 11 Vt., 447; *Hall v. Parker*, 37 Mich., 590; *Lovett v. Adams*, 3 Wend. [N. Y.], 380; *State v. Peper*, 31 Ind., 76; *People v. Bostwick*, 32 N. Y., 445.) It is equally well settled that when such

a bond is delivered to the obligee without being signed by all the persons named in the body thereof as obligors, it is sufficient to put the obligee upon inquiry whether those who signed consented to its being delivered without the signatures of the others, and to charge the obligee with notice, if such be the fact, that the person signing did so upon the condition that the others named should also sign. (*Cutler v. Roberts, supra; State Bank v. Evans*, 3 Greene [N. J.], 155; *Sharp v. United States*, 4 Watts [Pa.], 21; *Clements v. Cassilly*, 4 La. Ann., 380; *City of Sacramento v. Dunlap*, 14 Cal., 421; *People v. Hartley*, 21 Cal., 585; *Wood v. Washburn*, 2 Pick. [Mass.], 24; *Bean v. Parker*, 17 Mass., 591.)

Is there any presumption that such a bond is incomplete and unfinished, until executed by all the parties whose names appear in it as obligors? Upon this point the authorities are not harmonious. The following cases hold that no presumption arises that such a bond was not considered as binding until the signatures of all the obligors named in the body have been obtained, but on the contrary its execution is deemed *prima facie* complete, and it is for the defendants to establish that they signed on the express condition that they were not to be bound until all the obligors named in the instrument should sign: *Dillon v. Anderson*, 43 N. Y., 231; *Parker v. Bradley*, 2 Hill [N. Y.], 584; *Haskins v. Lombard*, 4 Shep. [Me.], 140; *Cutler v. Whittemore*, 10 Mass., 442; *Johnson v. Weatherwax*, 9 Kan., 75; *Johnson v. Baker*, 4 Barn. & Ald. [Eng.], 440. Some of the authorities which hold that the presumption is such instrument was not to be delivered until all had signed are: *Sharp v. United States, supra; Clements v. Cassilly, supra*. We are inclined to the doctrine that the instrument is *prima facie* binding. This presumption may be overcome by proof that such bond was not to be binding upon the one who signed until the signatures of all have been attached. The bond under consideration in this

case is joint and several; all obligors are principals, there being no sureties. Each obligor is separately liable, without the signatures of the others named in the instrument as obligors, unless at the time of the signing it was understood the signatures of all therein named should be obtained, and that the obligee had notice of the conditions imposed at the time of the delivery of the instrument. It appears from the allegations of the petition that the bond in suit was actually delivered to the obligee by the persons executing the same, and that they afterwards recognized the validity of the instrument by paying to the defendant in error $12,200, and by turning over to him the trust property in accordance with the stipulations of the obligation. This is sufficient to show that the bond was delivered unconditionally, without the additional signatures, by the plaintiffs in error, and they are bound by the terms of the undertaking. This principle is recognized by the authorities cited. (See, also, *State v. Peck*, 53 Me., 284.) True it is that the paper signed by the creditors was not executed by all the creditors of the bank, and that four of them never signed the proposition of compromise; but that is not important, since it appears that it was delivered to and accepted by the plaintiffs in error. The language of the instrument is that "the undersigned, creditors of the Farmers & Merchants Bank of Humboldt, being desirous of effecting a compromise and settlement of all differences touching the liability of the several stockholders of said bank, hereby severally agree," etc. It is obvious that the offer of compromise was binding on the creditors who affixed their names thereto, notwithstanding all the creditors did not sign it. (*Lambert v. Shetler*, 32 N. W. Rep. [Ia.], 424.)

The objection to the petition that it does not appear that there was any consideration for the giving of the bond is without merit. It is alleged in the pleading, and recited in the bond, in effect, that the creditors of the bank discounted their claims to the extent of ten per cent, threw

off a portion of the interest, and extended the time of payment of the indebtedness of the bank as an inducement to the stockholders to give the instrument declared upon.    It requires no argument to show that this was a sufficient consideration for the undertaking of the plaintiffs in error. The petition stated a cause of action, and the demurrer was properly overruled.

The overruling of the motion to strike out certain allegations of the petition as redundant is made the basis of the second assignment in the petition in error, but as it is not relied upon in the briefs, this assignment will be deemed waived. (*Gill v. Lydick*, 40 Neb., 508; *Glaze v. Parcel*, 40 Neb., 732.)

Complaint is made in the brief filed of numerous decisions of the trial court on the admission of the testimony of several witnesses whose names are given.    We cannot consider any of these rulings, because they are not sufficiently raised by the petition in error.    The only assignment therein which could be construed as relating to the rulings just mentioned is the sixth, which is in the following language: "Because of errors of law occurring at the trial, excepted to at the time by the defendants below."    In *Murphy v. Gould*, 40 Neb., 728, an assignment in a petition in error, in substantially the same language, was held insufficient to secure a review of the rulings of the court below on the admission of testimony.    We adhere to that decision.

The next, and the most important question presented by the record for consideration is whether the penal sum of $25,000, named in the bond, is the maximum limit of the liability which the obligors assumed.    The general rule deducible from the authorities in this country is that on the breach of a penal bond the obligee may recover his actual damages sustained, not exceeding the penalty named in the bond, or the penalty and interest, there being some conflict in the cases whether interest is allowable or not. (*Fraser v. Little*, 13 Mich., 195; *Spencer v. Perry*, 18 Mich., 393;

*Freeman v. State,* 54 Ill., 153; *Copeland v. Cunningham,* 63 Ala., 394; *Carter v. Carter,* 4 Day [Conn.], 30; *Warner v. Thurlo,* 15 Mass., 153; *Windham v. Coats,* 8 Ala., 285; *Seamans v. White,* 8 Ala., 656; *Tyson v. Sanderson,* 45 Ala., 364; *Woods v. Commonwealth for Pennington's Heirs,* 8 B. Mon. [Ky.], 112; *New Haven Bank v. Miles,* 5 Conn., 587; *King v. Brewer,* 19 Ind., 267; *Balsley v. Hoffman,* 13 Pa. St., 603; *Farrar v. United States,* 5 Pet. [U. S.], 373.) Some decisions are to the effect that an action may be maintained on the covenants or stipulation in a bond between private parties, and that in such case the recovery is not limited to the penalty named, but the measure of damages is the full amount of loss sustained. (*Sweem v. Steele,* 5 Ia., 352; *Graham v. Bickham,* 4 Dall. [U. S.], 149; *Waynick v. Richmond,* 11 Kan., 488.; *Stewart v. Noble,* 1 Greene [Ia.], 26; *Buckmaster v. Grundy,* 1 Scam. [Ill.], 310.) In most of the cases where damages exceeding the penalty have been given there was an express covenant in the condition of the bond that the obligor must do or omit to do some particular act. While the writer is not entirely satisfied that the rule last stated should not obtain in this case, since there are no sureties upon the bond, but the obligors are all principals, yet I yield to the rule supported by the weight of the authorities upon the question, and to the judgment of my associates.

The case of *Spencer v. Perry, supra,* is much like the one at bar. That was an action upon a bond in the penal sum of $6,000, conditioned for the payment by the defendant of all the debts of the firm of Spencer & Newcombe, and to indemnify the plaintiff, one of the firm, against such debts. Subsequent to the execution of the bond the defendant paid the debts of the firm to an amount exceeding the penalty of the bond. The court held there could be no recovery, since the voluntary payment by the defendant of the debts of the firm equal to the penalty was the satisfaction of the bond. Christiancy, J., in de-

livering the opinion of the court, uses the following language: "We need express no opinion here upon official bonds, or those of executors, administrators, guardians, etc., which are regulated by special provisions of statute; but it is easy to see that these all stand upon grounds very different from the bond in this case, or ordinary bonds *inter partes*. The obligation of officers, executors, etc., to pay over and account for money coming into their hands by virtue of their office is not created by the bond, but is imposed by the law, and the bond is but a collateral security for the performance of a legal obligation not dependent upon the bond. In paying over and accounting for moneys, therefore, as required by law, the officer, executor, etc., is only performing a duty imposed upon him by the law, independent of the bond. No amount of payments, therefore, will prevent a recovery to the full extent of the penalty in case of a default to that amount. In other words, the bond applies only to the sum or sums for which the party is in default, and not to sums which may have been paid over in the performance of official or legal obligation, not created by the bond. The present bond was a contract between private parties, and one chief object of putting it in the form of a bond with a penalty must, according to the general understanding in such cases, be supposed to have been to fix the limit beyond which the liability of the defendant should not extend. Another object may have been to enable the obligee to enforce it by action of debt, instead of covenant. The legal effect of the bond, as to the extent of liability, does not differ from that of a covenant, without a penalty, to pay the debts of the firm to an amount not exceeding six thousand dollars. If the parties had intended to provide for a liability to an indefinite extent, to be limited only by the amount of the debts of the firm, whatever they might be, the obvious mode of creating such a liability was by a covenant to that effect without a penalty, or by making the penalty of the bond so large as, in

any event, to exceed the debts, as the parties probably sup-
posed they had done here."

Our conclusion is, not considering the question of inter-
est, that the penalty is the limit of liability of the obligors
for a breach of the conditions of the bond. As already
stated, the decisions are not harmonious upon the proposi-
tion of allowing interest beyond the penalty. The decided
weight of authority sustains the doctrine that where the
damages sustained exceed the penalty, interest may be re-
covered from the time the condition of the bond was bro-
ken, or the damages became due. (2 Sedgwick, Damages,
sec. 678, and cases there cited; Sutherland, Damages, sec.
478, and note 2.) The true principle—one supported by
the better authorities, and which we adopt—is that interest
is recoverable in this kind of an action.

We will not review the instructions given and refused,
because the assignment in the motion for a new trial relat-
ing thereto is insufficient, the assignment of error being
substantially the same as in *Hiatt v. Kinkaid,* 40 Neb.,
178. Objection is likewise made to certain instructions on
the ground that they are not numbered. The point is prop-
erly raised in the motion for a new trial and in the petition
in error, but no exceptions were taken to the instructions
on the ground that they were not numbered when read to
the jury, hence the objection is waived. (*Gibson v. Sulli-
van,* 18 Neb., 558.)

It remains to be considered whether the damages assessed
by the jury are excessive. The record shows that the
amount of the claims of the creditors, as allowed by the
county court, aggregated more than $45,000, without the
discount of ten per cent stipulated in the bond, or over
$40,000, after deducting the ten per cent. It further ap-
pears, without conflict, that the defendants have made cash
payments, after the bond was signed, and prior to the bring-
ing of the suit, aggregating the sum of $13,200, less the
amounts given as credit on account of the two claims we are

about to mention. There were transferred to the defendant in error the claim of William Nims against the bank of $2,533.42, and the claim of A. R. Nims of $3,607.22. There is a dispute in the testimony as to the amount of credit the plaintiffs in error were entitled to receive on account of the assigning and turning over of these two claims. Evidence was introduced by the defendant below conducing to show that they were to be allowed ninety per cent of the claims. On the other hand, the testimony of Mr. Morris is to the effect that he was to give credit for enough above the sum of $9,500 in cash paid on October 1, 1889, to make up the $12,200 payment mentioned in the bond. As a reviewing court, we cannot do otherwise than to regard the fact to be as testified to by Mr. Morris, although there is in the record ample evidence to have warranted the jury in finding that the plaintiffs in error were entitled to be allowed ninety per cent of these two claims. It also appears, without any dispute, that the sum of $800 was realized from Mr. Turk's store property which was turned over by him to Mr. Morris to apply on the indebtedness of the bank, which, added to the $13,200, makes a total of $14,000. Considerable money was realized by the plaintiff below from the assets which came into his hands belonging to the bank, but the amount thus received is not important, since the obligors are not entitled to have the same applied as a payment on the penalty. They obligated themselves in the sum of $25,000 to pay the trustee of the creditors $12,200 by a specified date and to discharge the indebtedness of the bank remaining after the assets in the hands of Mr. Morris were converted into money and disbursed.

Objection has been made that payment is not an issue presented by the pleadings. There is no room to doubt that payment, to be available as a defense, must be pleaded, and, if denied, must be proved. (*Clark v. Mullen*, 16 Neb., 481; *Van Buskirk v. Chandler*, 18 Neb., 584.) It will be

observed that the pleadings in this case regarding payment are in this condition: The petition avers, in effect, that the defendants have paid on the bond the sum of $12,200. This allegation is put in issue by the general denial in the answer. The answer avers that the defendants have paid $——, and that two certain of the defendants have each paid $2,500. These allegations are denied by the reply. The answer sufficiently pleads payment to the extent of $5,000 and no more; but as payment to the amount of $12,200 is set out in the petition, although denied by the answer, and as the evidence sustaining such averment was received without objection, the defendants should be permitted to avail themselves of the defense of payment to the extent of $12,200 only. The difference between this sum and $25,000, the penalty of the bond, is $12,800, for which sum, with seven per cent interest thereon from October 1, 1891, the date of the breach of the conditions, until December 13, 1892, the date of the verdict, or $13,875.18, is the measure of damages. The verdict is therefore excessive to the amount of $7,273.57. In case the defendant in error files with the clerk of this court, within forty days, a remittitur in the last named sum, the judgment will be affirmed for the sum of $13,875.18, with interest thereon from date of the verdict; otherwise it will be reversed, and the cause remanded for further proceedings in accordance with this opinion.

JUDGMENT ACCORDINGLY.