BLUE VALLEY LUMBER COMPANY ET AL. V. A. D. SMITH.

FILED MAY 6, 1896. No. 6448.

1. **Instructions: EXCEPTIONS.** Exceptions should be taken separately to instructions, and not *en masse*.

2. ——: ——: REVIEW. An exception to instructions numbered 1, 2, 3, 4, 5, 6, 7, 8, and 9, given by the court to the jury on its own motion, is in substance and effect a general exception to the whole charge, consisting of nine paragraphs, and such exception is not available on review, if any one of the instructions was correct and free from criticism.

3. ——: ASSUMPTION OF FACT. It is not reversible error to refuse an instruction based on an assumption of fact in issue in the case.

4. **Negotiable Instruments: CONSIDERATION.** A lack of consideration is no defense to negotiable paper in the hands of an innocent purchaser for value in the usual course of business before maturity.

ERROR from the district court of Douglas county. Tried below before SCOTT, J.

*Brome, Burnett & Jones*, for plaintiffs in error.

*John P. Breen*, contra.

NORVAL, J.

This was an action upon two bills of exchange drawn by Abner Conro & Son upon, and accepted by, the Blue

Valley Lumber Company, and indorsed by F. N. Jaynes.
The suit was brought by A. D. Smith, the owner of said
bills of exchange, against both the acceptor and indorser
thereof. A verdict was returned in favor of the plaintiff
for the full amount claimed in the petition, and from a
judgment rendered on the verdict the defendants have
prosecuted error to this court.

The Blue Valley Lumber Company, a corporation or-
ganized under the laws of this state, and doing business
at the city of Omaha, on the 9th day of January, 1892,
entered into a written contract with Abner Conro & Son,
a firm engaged in the lumber business at Rhinelander,
Wisconsin, for the purchase from the latter of 6,000,000
feet of pine lumber, then piled in the yards of said Conro &
Son, at Rhinelander. By the terms of the contract the
lumber was to be delivered on board of cars to such per-
sons as the Blue Valley Lumber Company might direct,
and that each party should furnish a scaler to scale the
lumber and tally the shingles and lath. The bills of ex-
change in question were executed on account of the pur-
chase price of said lumber. The Blue Valley Lumber
Company, for answer to the petition, pleads the contract
for the purchase of the lumber; alleges that the quantity,
quality, or amount of the different grades of lumber
could not be ascertained from an ordinary inspection
thereof; that in order to induce it to enter into said con-
tract said Conro & Son falsely represented to defendant
that there were 214,415 feet of lumber of grade "C" and
better, and there were 492,716 feet of No. 1 boards and
fencing; that, relying upon said representations and be-
lieving them to be true, defendant was induced to and
did enter into said contract of purchase; that afterwards,
without any knowledge that said representations re-
specting the quantity, quality, and grades of said lumber
were untrue, defendant did from time to time cause to be
shipped to various parties and places in Nebraska and
Kansas said lumber, and executed said drafts or bills of
exchange; that afterwards defendant discovered that

said representations of said Conro & Son were false and
untrue, in this, that there were not to exceed 165,000 feet
of grade "C" and better, and not to exceed 232,000 of No.
1 boards and fencing; that if the lumber had been of the
quantity, quality, and grades represented it would have
been worth $80,000, while it was not actually worth to
exceed $55,000; that Conro & Son, when said representa-
tions were made, knew that they were false and untrue,
and were made for the purpose and with the design of
cheating and defrauding defendant. It is further averred
that plaintiff is not an innocent purchaser of the bills of
exchange; that defendant had overpaid Conro & Son for
the lumber actually obtained from them at the time said
bills of exchange were executed, and that said Conro &
Son released, in writing, defendant from any and all lia-
bility on account of the contract for the purchase of said
lumber.   The reply denies the allegations of the answer.
Evidence bearing upon the question of false representa-
tions set up in the answer was conflicting.   That intro-
duced by the defendant tended to sustain its contention.
Upon this branch of the case the court instructed the
jury as follows:

"7. If you find from the evidence that Conro & Son and
the plaintiff fraudulently and, with the intent to cheat
and defraud defendant, falsely represented that the lum-
ber was of a certain quality and grade, or if said Conro &
Son fraudulently and, with intent to cheat and defraud
defendant, falsely represented that the lumber was of a
certain quality and grade, and you further find that
plaintiff knew, or had reason to know, or had such infor-
mation thereon as would have put a reasonable, cautious,
and prudent man upon inquiry, and which inquiry would
have led to a discovery of the fraudulent representations
respecting the quality and grade of the lumber, if any
were made, at the time he obtained the ninety-day draft,
then the assignment of the contract by defendant to
Jaynes would not prevent defendant from recovering
upon its counter-claim for such damages as it has proven

that it has sustained by reason of such fraudulent representations as to the lumber received by it prior to the assignment to Jaynes by defendant, under the directions herein given you; but if you find for defendant upon its counter-claim, defendant must have satisfied you that the representations, if any, as to the quality of the lumber were in fact made; that they were false; that they were known to be false at the time that they were made; that they were made for the purpose of cheating and defrauding defendant; that defendant believed such representations and upon the strength of which it purchased the lumber; that defendant was damaged thereby and the amount of its damage.

"You are further instructed that if you find that false and fraudulent representations as to the quality of the lumber were made, but the defendant did not rely upon such representations in making the purchase, but had an agent acting for it as a scaler of the lumber, and you find that such scaler did examine and determine the quality of the lumber while so acting for defendant, then defendant could not recover upon its counter-claim. Nor could defendant recover upon its counter-claim if you find that at the time of the purchase of the lumber, defendant's agent, Jaynes, knew, or had reason to know, that the lumber was not as represented by Conro & Son, even though you find Conro & Son did falsely and fraudulently represent the quality of the lumber for the purpose of cheating and defrauding the defendant."

The giving of this instruction is assigned for error. Counsel for plaintiff below insist that no proper exception was taken to the instruction when given, therefore no foundation has been laid for its review by this court. The record shows that nine instructions were given by the trial judge on his own motion, and the following is the only exception taken at the time by the defendant:

"The Blue Valley Lumber Company, at the time the instructions were given, and in the presence of the court and jury, excepted to instructions numbered 1, 2, 3, 4, 5,

6, 7, 8, and 9, given by the court to the jury on its own motion.

"Correct.                                   SCOTT, J."

The above is not a separate exception to each instruction given, but a general exception to the entire charge to the jury. It does not single out a particular instruction as erroneous, but the defendant has excepted to the charge *en masse*, which is only sufficient to bring up for review the propriety of the instructions as a whole. If they were all bad, doubtless a sufficient foundation is laid for their review. Several separate and distinct propositions are embodied in the charge of the court, some of them are manifestly correct, and but one is assailed by defendant here. It is the settled law of this state that exceptions must be taken separately to instructions which are deemed objectionable, and that a general exception to the whole charge, involving more than one proposition, will be of no avail if any one of the paragraphs therein contained be correct or faultless. (*McReady v. Rogers*, 1 Neb., 124; *Strader v. White*, 2 Neb., 348; *First Nat. Bank of Denver v. Lowrey*, 36 Neb., 290; *Omaha Fire Ins. Co. v. Dierks*, 43 Neb., 473; *Redman v. Voss*, 46 Neb., 512; *City of Omaha v. McGavock*, 47 Neb., 313.) The exception preserved in the case at bar is to the whole charge, as much so as if the exception read "the defendant excepts to the giving of the instructions by the court on its own motion," or had this language been employed in noting the exception: "Comes now the defendant and excepts to the instructions numbered from 1 to 9, inclusive, given to the jury by the court on the trial of said cause." An exception in substantially the same language as that just quoted was held insufficient in *Omaha Fire Ins. Co. v. Dierks*, 43 Neb., 473. It has been repeatedly held, and this is but an application of the principle for which the plaintiff in this case contends, that an assignment in a petition in error, or a motion for a new trial, that the court erred in giving instructions 1, 2, 3, 4, etc., is too general to call for review each instruction in-

cluded in the group, and will be examined no further than to ascertain that any one of them was correct. (*Hiatt v. Kinkaid*, 40 Neb., 178; *McDonald v. Bowman*, 40 Neb., 269; *Jenkins v. Mitchell*, 40 Neb., 664; *Murphy v. Gould*, 40 Neb., 728; *Armann v. Buel*, 40 Neb., 803; *Houston v. City of Omaha*, 44 Neb., 65; *Schelly v. Schwank*, 44 Neb., 504; *Stoppert v. Nierle*, 45 Neb., 105; *Smith v. First Nat. Bank of Chadron*, 45 Neb., 448.) Since exceptions were taken in this case to the instructions *en masse*, and one or more of the paragraphs not being erroneous, upon principle, as well as authority, we are constrained to hold that no sufficient foundation has been laid for a review by us of the instruction above quoted.

Complaint is made because the court refused the defendant's third, fourth, and fifth requests to charge, which are as follows:

"3. If you find from the evidence that the drafts in suit were given without consideration, or, in other words, at the time they were executed and delivered there was no balance due said Conro & Son from said Blue Valley Lumber Company on account of, and for the purchase price of, said lumber, then your verdict will be for the defendant.

"4. If you find from the evidence in this case that after the maturity of one of the drafts in suit, the same was paid to the holder and owner thereof by Conro & Son, the makers thereof, then plaintiff cannot recover in this action as to such draft.

"5. If you find from the evidence that defendant herein, at the time of the commencement of this action, was not indebted to Abner Conro & Son on account of purchase price of said lumber, or in any manner whatever, then your verdict will be for defendant and against plaintiff as to both causes of action set up and stated in plaintiff's petition."

The third and fifth requests to charge are each based on an assumption of fact in issue in the case, and for that reason were properly refused. If plaintiff was an inno-

cent purchaser of either of the bills of exchange or drafts for value before maturity, he was entitled to recover, even though they were given without consideration, and defendant was not indebted to Conro & Son anything on account of the lumber purchased. These drafts were negotiable in form, and as to one of them there was evidence adduced tending to show the plaintiff was a good-faith purchaser for value before maturity, without notice of any defense existing against it, and if so, as to such paper, plaintiff was protected and the defense interposed against it is unavailing. It is conceded that plaintiff became the owner of one of the drafts after its maturity. The instructions requested were framed upon the theory that plaintiff was not an innocent purchaser of either draft, and for that reason they were faulty. The fourth request did not contain a correct statement of the law. Conro & Son had indorsed one of the drafts, and after its maturity they made their indorsement good by taking the same up, and then retransferred the draft to plaintiff. The fact that Conro & Son had lifted the draft would not alone defeat a recovery in the hands of plaintiff, the undisputed owner. To have that effect it must be shown that there was nothing due thereon, and that was a controverted issue in the case. The instruction assumed, upon conflicting evidence, that the defense against such draft was established, and therefore was properly refused. The judgment is

AFFIRMED.